97 So.2d 18 (1957)
STATE ex rel. Charles B. SPARKS, Appellant,
v.
Mrs. A.E. REEVES, Appellee.
Supreme Court of Florida.
September 18, 1957.
David Lanier, Madison, for appellant.
John K. Folsom and Hopkins & Folsom, Tallahassee, for appellee.
THORNAL, Justice.
Appellant Sparks who was petitioner below in a habeas corpus proceeding involving the custody of two children seeks reversal of an order of the Circuit Judge denying the prayer of his petition.
The determining question is whether the showing made by the appellant who was the father of the children was sufficient to justify a transfer of custody from the appellee who was the grandmother of the minors.
An earlier phase of the case was here before. State ex rel. Sparks v. Reeves, Fla. 1955, 81 So.2d 754, 755. Our opinion on the prior appeal adequately delineates the factual background. Subsequent to the prior *19 opinion and on July 8, 1956, the appellant-father filed a second petition in the Circuit Court. By the prayer of this petition he requested the Circuit Judge to modify the original order of May 1, 1953, by which the custody of the children was awarded to the appellee-grandmother subject to change by further order of the Court. Our 1955 opinion affirmed an order of the Circuit Judge entered on December 10, 1954, by which the Judge declined to transfer custody from the grandmother to the father but again retained jurisdiction to enter such further orders as the welfare of the children might justify.
At the hearing on the petition now under consideration it appears that the appellant-father has diligently exerted every reasonable effort to justify the restoration of custody of his children. It is shown that he has regularly contributed financially to the support of the children, that he has purchased a home in Brevard County, is happily married, has a good job, earns a livable wage; he is morally stable, sober and apparently exceedingly anxious to have his children with him. It also appears that the appellee and her husband, the maternal grandparents of the children, have demonstrated themselves to be loving and devoted grandparents. They too are highly respectable people who obviously work hard to produce a living and who bestow upon their grandchildren such care and attention as has justified the respect and admiration of the community. On the basis of the showing made in July, 1956, however, the Circuit Judge remained of the view that the welfare of the children did not justify a change in custody and that the appellant-father had failed to show a sufficient change in circumstances between the order entered in December, 1954, and the hearing in July, 1956, to justify a change in custody. The Circuit Judge again declined to transfer the custody of the children to their father but retained jurisdiction to enter such further orders as might appear proper. Reversal of his order is here sought.
It is the contention of the appellant-father that he has now demonstrated himself to be worthy of enjoying the custody of his children and that he is able and desirous of providing for them a comfortable home and bestowing upon them the paternal care and affection that is both his privilege and his obligation.
The appellee on the other hand contends that she and her husband have provided for the children since they were babies, that they are devoted to them and in the ultimate that the happiness and welfare of the children precludes any change in their custody.
We, like, the Circuit Judge, are confronted with one of the most difficult of all problems to resolve. Our own consideration of the matter is necessarily influenced by the fact that the cause was heard below by an exceedingly able and experienced Circuit Judge who resolved the evidence in favor of the appellee. While we are here constrained to hold that the presumptive correctness of the order of the Circuit Judge has not been clearly overcome so as to justify a reversal, we are likewise compelled to point out that any subsequent consideration of this matter should be determined in the light of certain well-established principles which we herewith mention for the guidance of the parties and the trial Judge.
In our prior opinion we pointed out that under the circumstances indicated as of November, 1954, it would be an unjustifiable experiment to tranfer the custody of the children "at least until such time as the appellant has more clearly demonstrated his parental interest in, and desire to care for, his children." We did, however, point out that the father had not permanently relinquished his right to enjoy the custody of his children. We did hold that he should more clearly demonstrate and give evidence of his right to enjoy the privilege by his future conduct. The question, therefore, recurs as to whether this father has now sufficiently demonstrated parental devotion to enable us to accord to him his legal right to custody. State ex rel. Sparks v. Reeves, *20 supra; State ex rel. Bonsack v. Campbell, 134 Fla. 809, 184 So. 332.
We are not unmindful of the rule of law that in habeas corpus proceedings involving the custody of minors of tender years, the Circuit Judge is accorded the privilege of exercising a broad judicial discretion in determining the ultimate question of the welfare of the children themselves. Reynolds v. Alderman, 72 Fla. 39, 72 So. 369; Culpepper v. Osteen, 153 Fla. 161, 13 So.2d 911.
While according to the trial Judge a broad judicial discretion in the matter we nevertheless cannot lose sight of the basic proposition that a parent has a natural Godgiven legal right to enjoy the custody, fellowship and companionship of his offspring. State ex rel. Weaver v. Hamans, 118 Fla. 230, 159 So. 31. This is a rule older than the common law itself and one which had its inception when Adam and Eve gave birth to Cain in the Garden of Eden. Gen. 4:1. In cases such as this one the only limitation on this rule of parental privilege is that as between the parent and the child the ultimate welfare of the child itself must be controlling.
A cautious and sympathetic examination of the record before us leads us to the thought that if since the hearing in July, 1956, this father has continued to demonstrate the overall moral, spiritual and material capacity to care for his children as was presented to the Circuit Judge by the evidence at the last hearing then there would appear to be no valid legal or equitable reason why he should not be permitted to have the benefit of his legal rights in the premises. Witt v. Burford, 84 Fla. 201, 93 So. 186; Busbee v. Weeks, 80 Fla. 323, 85 So. 653; Hart v. Howell, 154 Fla. 878, 19 So.2d 317; State ex rel. Hicks v. Cain, 160 Fla. 680, 36 So.2d 275.
When this cause was last here it was the view of the majority of this Court, as expressed in its opinion, that the father should by his conduct more clearly demonstrate his entitlement to enjoy the legal privilege of custody of his children. The record now leads to the thought that he has in good conscience undertaken to meet the requirements of the responsibility placed upon him. Assuming that this conduct has continued since the date of the order which we herewith affirm, then upon a subsequent showing to that effect we can see no sound legal reason why his rights under the law should not be recognized.
We are not immune or unsympathetic to the appealing position of the appellee-grandparents. Implicit in the attitudes expressed in the cold record we detect the often-occurring and perhaps perfectly natural attitudes of the parents of a deceased mother who envision themselves as the only persons competent and qualified to bestow upon their daughter's children the love and affection which would have come to them if their mother had lived. This is not an uncommon situation especially when the father of the children remarries. Nevertheless, it must not be lost from mind, by them or the Court, that the custody given them, and the care and devotion which they lovingly and willingly bestow upon the children, rests upon a temporary foundation, namely, the inability of the father at the time to care for them. It can and should continue only so long as such disability on his part continues and the welfare of the children requires. After all he is, at least insofar as here appears, paying for what the children get. The problem of the Courts in deciding the issue is complicated by the fact that we here deal with one of the warmest and most affectionate of human relationships which nonetheless often crystallizes into adamant and uncompromising attitudes. This apparently has come about in the instant case.
In view of the foregoing, the order under attack is affirmed, but without prejudice to the appellant to renew his application for custody of his children at an early date consistent with their welfare. Such welfare is not entirely, though it must be in *21 part, determined simply on a comparative basis. In other words, once the father's ability reaches adequacy, his legal right should not be overcome by the fact that the respondents' offerings may be more adequate than his, or that they may continually out-do him, at least in material matters. At any subsequent hearing the trial Judge shall take into consideration the showing made by the appellant at the hearing held pursuant to the petition filed by him on July 8, 1956, as well as any subsequent facts relevant to the problem. It is the spirit and intent of this opinion that if, since the order of July 20, 1956, the appellant has continued to demonstrate a continuity of the conduct evidenced at the last hearing, then his legal right to his children should be recognized, the equities otherwise being equal.
It is so ordered.
TERRELL, C.J., and HOBSON, ROBERTS and DREW, JJ., concur.